Filed 9/7/22  P. v. Hernandez CA2/8
See dissenting opinion

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B310557 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA144413) |
| v. | |
| CASEY GILBERT HERNANDEZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lee W. Tsao, Judge.  Reversed and remanded.

Richard B. Lennon, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael R. Johnsen and Yun K. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Assembly Bill No. 1950 (Assembly Bill 1950) (2019-2020 Reg. Sess.), effective January 1, 2021, shortened the maximum term of a sentence of probation for most felonies from five years to two years. This appeal requires us to determine whether a trial court may summarily revoke probation for a violation that occurred during the original term of probation, but would be deemed outside the original term if Assembly Bill 1950 were applied. We hold that the trial court should have applied Assembly Bill 1950 in this context to set aside the revocation of probation.

### *Facts*

On February 9, 2018, appellant Casey Hernandez was sentenced to three years probation. His probation was originally set to expire on February 9, 2021. On September 24, 2020 (more than 2 years and 7 months after probation began) the trial court summarily revoked his probation and issued a bench warrant. The court had been informed that appellant had failed to report to the probation officer after being released from custody that was a term of his probation, and had failed to provide proof that he attended residential drug treatment. On January 21, 2021, appellant admitted he had violated the terms of his probation. The court formally revoked probation, sentenced appellant to 180 days in the county jail, and ordered probation to terminate upon completion of the 180-day sentence. Appellant was released after serving one day of the 180 days and his probation terminated.[1]

---

[1] The People argue this appeal is moot because appellant's probation has terminated. We disagree. (*People v. Nolan* (2002) 95 Cal.App.4th 1210, 1213; *People v. Buell* (2017) 16 Cal.App.5th

Appellant obtained a certificate of probable cause to pursue an appeal of the revocation of his probation.  He argues here, as he did in the trial court, that the court lacked jurisdiction to revoke his probation because new legislation, effective January 1, 2021, shortened his probationary term from three years to two years.  He argues that the reduction meant that his probation expired February 9, 2020, long before the court summarily revoked his probation in September 2020, and long before he allegedly violated probation.  We agree that Assembly Bill 1950 applies retroactively, and barred the trial court from revoking appellant's probation.

### Assembly Bill 1950

Assembly Bill 1950 reduced the maximum probation term for most felony offenses, with exceptions not relevant here, to two years.  (Pen. Code, § 1203.1, subds. (a) & (m).)[2]  Because the reduction in the length of the probation term has an ameliorative effective, we presume that our Legislature intended to make its effect retroactive to nonfinal convictions in the absence of an express savings clause specifying a contrary intent. (*In re Estrada* (1965) 63 Cal.2d 740, 746–747 (*Estrada*).) Assembly Bill 1950 includes no such savings clause and we join the many other courts which have considered the issue in holding it to be retroactive.  (See, e.g., *People v. Flores* (2022) 77 Cal.App.5th 420, 431–432, review granted June 22, 2022, S274561; *People v. Butler* (2022) 75 Cal.App.5th 216,

---

682, 688 [appeal is not moot because it affords the defendant the opportunity to clear the record and erase the " ' "stigma of criminality." ' "].)

[2]    Undesignated statutory references herein are to the Penal Code.

3

review granted June 1, 2022, S273773; *People v. Sims* (2021) 59 Cal.App.5th 943, 955–956; *People v. Quinn* (2021) 59 Cal.App.5th 874, 883.)

As amended by Assembly Bill 1950, subdivision (a) of section 1203.1 now provides, "The court, or judge thereof, in the order granting probation, may suspend the imposing or the execution of the sentence and may direct that the suspension may continue for a period of time not exceeding two years, and upon those terms and conditions as it shall determine." (§ 1203.1, subd. (a).)

### *Summary Revocation of Probation*

Section 1203.3, subdivision (a), empowers the trial court "at any time during the term of probation to revoke, modify, or change its order of suspension of imposition or execution of sentence." Under section 1203.2, the court is authorized to summarily revoke a defendant's probation. Such summary revocation gives the court jurisdiction over (and physical custody of) the defendant, and is proper if the defendant is accorded a subsequent formal hearing in conformance with due process. (*People v. Clark* (1996) 51 Cal.App.4th 575, 581.)

Summary revocation of probation preserves the trial court's authority to adjudicate a claim that the defendant violated a condition of probation during the probationary period. The purpose of subsequent formal proceedings "is not to revoke probation, as the revocation has occurred as a matter of law; rather, the purpose is to give the defendant an opportunity to require the prosecution to prove the alleged violation occurred and justifies revocation." (*People v. Clark*, *supra*, 51 Cal.App.4th at p. 581.) Probation may be revoked for only those violations that occur within the probationary period. (*People v. Leiva* (2013)

4

56 Cal.4th 498, 505.) Summary revocation of probation also tolls the running of the probationary term until a formal probation hearing occurs. (§ 1203.2, subd. (a).)

*Analysis*

The retroactive effect, if any, of Assembly Bill 1950 has been addressed in several recent cases that involved varying procedural postures. Virtually every case has concluded that Assembly Bill 1950 is to be applied retroactively to cases not yet final, in accordance with *Estrada, supra,* 63 Cal.2d 740. Our Supreme Court has granted review in a number of these cases where the retroactivity of Assembly Bill 1950 is at issue.[3] It seems unlikely the long-standing *Estrada* retroactivity rule will be jettisoned by the high court as applied to Assembly Bill 1950. The real issue is not whether the statute should be applied retroactively, but rather *how* it is to be applied retroactively.

Assembly Bill 1950 became effective on January 1, 2021. It specified that, with exceptions not relevant, felony probationary periods are not to exceed two years. Appellant's formal probation violation hearing was held in January of 2021, after Assembly Bill 1950 had become effective. Thus, Assembly Bill 1950 was in effect at the time the trial court was asked to formally revoke probation, and it is in effect now when this

---

[3] (See *People v. Arreguin* (2022) 79 Cal.App.5th 787, 793, fns. 7-9.) At our invitation, the parties filed letter briefs addressing three of the recent cases, which have all subsequently been granted review by our Supreme Court. (See *People v. Canedos* (2022) 77 Cal.App.5th 469 (*Canedos*), review granted June 29, 2022, S274244, *People v. Faial* (2022) 75 Cal.App.5th 738, and *Kuhnel v. Superior Court* (2022) 75 Cal.App.5th 726, review granted June 1, 2022, S274000.)

appellate court is analyzing whether the trial court's jurisdiction to revoke had ended.

In our view, the analysis is straight-forward. *Estrada* compels us to apply Assembly Bill 1950 retroactively to non-final cases. The present case was not final when Assembly Bill 1950 went into effect (there was a probation revocation pending), and the pursuit of this appeal maintained its non-final posture. The wording and intent of Assembly Bill 1950 is to reduce felony probation periods to two years for non-final cases. That means Appellant is entitled to have his case reviewed by us utilizing the revised two-year probation period mandated by Assembly Bill 1950. Under the revised statute, his probation expired in February of 2020. At that time, he had no summary revocation of probation pending (nor is he alleged to have engaged in conduct that would justify a later summary revocation). Since there was no summary revocation of probation prior to the two-year deadline, there was nothing that tolled the expiration of the court's probation jurisdiction.[4] Appellant's conduct after the two-year deadline cannot be the basis for revoking the probation that we must now view as having expired in February of 2020.

---

[4] Some courts take the position that as long as *conduct* that would constitute a probation violation occurs during the probationary period shortened by Assembly Bill 1950, the court may still summarily and formally revoke probation *after* the shortened probation period. (See *Kuhnel v. Superior Court, supra,* 75 Cal.App.5th at p. 736.) We do not face that factual scenario in the present case, since the conduct occurred months after the two-year mark, and therefore do not reach that issue.

That is the scenario presented in *Canedos, supra,* 77 Cal.App.5th 469.[5] The defendant (Canedos) was placed on four years of probation in January of 2016. He engaged in conduct violating his probation almost four years later, in December of 2019, and his probation was summarily revoked. Canedos's probation was formally revoked in September of 2020, and during the pendency of his appeal Assembly Bill 1950 became effective, in January of 2021. Consistent with our analysis, the *Canedos* court determined that Assembly Bill 1950 caused the probation period to expire in January of 2018, rendering the later summary revocation of probation beyond the trial court's jurisdiction.

The People argue *Estrada* does not retroactively invalidate probation revocations that were lawful when imposed. *Canedos* addressed and rejected this argument and the cases that assert it. (*Canedos, supra,* 77 Cal.App.5th at pp. 477–478.) We find its reasoning persuasive. As the *Canedos* court noted, "[i]f the Legislature means to limit the scope of retroactive application, it must so specify . . . ." (*Id.* at p. 477.) We also note that the case for retroactive application is even stronger here than in *Canedos*, in that the *Canedos* formal revocation occurred before Assembly Bill 1950's effective date, whereas in our case Appellant faced formal revocation when Assembly Bill 1950 was fully in effect.

That the summary revocation of probation was lawful at the time it occurred does not compel the conclusion that it was not subject to invalidation as a result of a change in the law before the case became final. In recent years we have seen many convictions and sentencing enhancements that were entirely

---

[5] We cite to cases currently on review for their persuasive value, as permitted by Rules of Court, rule 8.1115(e)(1).

7

lawful at the time imposed, which were set aside because *Estrada* compels us to view the case through the lens of the law as modified by the legislature.[6] Assembly Bill 1950 compels a similar result in this case.

---

[6] For example, in *People v. Esquivel* (2021) 11 Cal.5th 671 (*Esquivel*), the trial court imposed but suspended execution of a five-year prison sentence, placing defendant on probation for that term. His time to appeal the original sentence expired. Approximately three years later defendant violated probation and the court ordered the prison sentence into effect. During the appeal of that probation revocation decision, the legislature amended the sentencing statute so that defendant's sentence under the revised statute would have been three years instead of five. Our Supreme Court held that defendant was entitled, under *Estrada*, to retroactive reduction of his sentence to three years, thereby invalidating the decision to find he was in violation of probation. (*Esquivel, supra,* at pp. 677–680.) The *Esquivel* court reached this result despite the fact that the trial court decision to revoke probation was entirely lawful and in accordance with the sentence imposed at the time the revocation occurred. This demonstrates that the lawfulness of the sentencing decision when made does not alter the necessity of retroactive invalidation of such decisions under *Estrada*. The *Stamps* case relied on by the dissent in the present case was cited in *Esquivel*, but did not alter the result. (*Esquivel*, at p. 676.) (See also *People v. McKenzie* (2020) 9 Cal.5th 40, 48–51.)

## DISPOSITION

The order revoking probation is reversed, and the case is remanded with instructions to reinstate and terminate probation in accordance with Assembly Bill 1950.


HARUTUNIAN, J.*

I concur:


GRIMES, J.

---

*	Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**STRATTON, P. J., Dissenting**

The trial court summarily revoked appellant's probation on September 17, 2020. Assembly Bill No. 1950 (Assembly Bill 1950) was not in effect, but appellant's probation was. So, when the trial court revoked appellant's probation, it acted lawfully and within the power conferred by Penal Code section 1203.3.

Appellant's argument gains traction only if we apply Assembly Bill 1950 to reach back and invalidate valid revocations that occurred before the law's effective date. I decline to do so. Although the holding of *In re Estrada* operates to shorten probationary terms as of January 1, 2021, I find this statute's particular retroactivity does not extend to invalidating lawful orders issued before it took effect.

My approach to examining the scope of Assembly Bill 1950's retroactivity tracks the analysis in *People v. Stamps* (2020) 9 Cal.5th 685 (*Stamps*). There our Supreme Court considered a recent retroactive amendment to Penal Code section 1385, which permitted trial courts to strike previously mandatory sentencing enhancements. Because the amendment there, as here, was retroactive, defendants with enhanced sentences and nonfinal judgments were permitted to have their trial courts consider whether to strike the enhancements from their sentences. In *Stamps,* appellant had such a sentence, but it had been negotiated as part of a plea agreement. Appellant argued that the Court had to remand the sentence to the trial court so it could consider striking the now-discretionary enhancement, but he argued the trial court had to leave intact the rest of the plea agreement.

The Supreme Court disagreed that the scope of the retroactive amendment to Penal Code section 1385 was so broad. It noted the "*Estrada* rule only answers the question of *whether* an amended statute should be applied retroactively. It does not answer the question of *how* that statute should be applied." (*Stamps, supra,* 9 Cal.5th at p. 700.) The Court stated "it is not enough for defendant to establish that the amended section 1385 applies to him retroactively under *Estrada* in order to receive the remedy he seeks. In order to justify a remand for the court to consider striking his serious felony enhancement while maintaining the remainder of his bargain, defendant must establish not only that [the amendment] applies retroactively, but that, in enacting that provision, the Legislature intended to overturn long-standing law that a court cannot unilaterally modify an agreed-upon term by striking portions of it under section 1385. We are not persuaded that the Legislature intended this result." (*Id.* at p. 701.) Indeed, the court noted that "none of the legislative history materials mention plea agreements *at all.*" (*Id.* at p. 702.)[1] The Court searched for and found no evidence that the Legislature intended to permit a court

---

[1] We review de novo questions of statutory construction. " 'When interpreting statutes, we begin with the plain, commonsense meaning of the language used by the Legislature. [Citation.] If the language is unambiguous, the plain meaning controls.' " (*People v. Leiva, supra,* 56 Cal.4th at p. 506.) In doing so, our fundamental task is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. We begin with the text, giving the words their usual and ordinary meaning while construing them in light of the statute as a whole and the statute's purpose. (*People v. Blackburn* (2015) 61 Cal.4th 1113, 1123.)

2

to carve enhancements out of a plea agreement, but to otherwise uphold the rest of the bargain.  It declined to afford appellant the remedy he sought.

As was true in *Stamps*, here Assembly Bill 1950 includes no language whatsoever addressing the issue of whether it was intended to reach back to invalidate revocations that were lawful when adjudicated.  Had the Legislature wanted to simply terminate lengthy probationary terms across the board, without regard to pending probation revocation proceedings, it could have said so.  Instead, the legislative materials specifically note that "this bill does not take the 'teeth' out of probation or the courts.  If a person on probation fails to comply with treatment or other conditions sets by the court during a probationary period, the court may revoke the person's probation until the person is back in compliance."  (Sen. Com. on Public Safety, Rep. on Assem. Bill No. 1950 (2019–2020 Reg. Sess.) as amended June 10, 2020, p. 7.)  This sole reference to revocation proceedings suggests to me that Assembly Bill 1950 was not proposed to vacate past probation revocations.  (See also Couzens, Bigelow & Prickett, *Sentencing Cal. Crimes* (The Rutter Group 2021) § 8:15.60, p. ___ [without evidence of legislative intent, Assembly Bill 1950 does not annul probation revocations that were valid when ordered].)

Nevertheless, as to intent, appellant argues that in passing Assembly Bill 1950, the Legislature intended to avoid the significant costs associated with enforcing and adjudicating technical and minor probation violations by shortening the maximum possible terms of probation.  (Sen. Com. on Public Safety, Rep. on Assem. Bill No. 1950 (2019–2020 Reg. Sess.) as amended June 10, 2020, p. 6–7.)  Assuming for the sake of argument that a failure to report to the probation officer is a

3

technical or minor violation, the Legislature's purpose is not advanced by invalidating lawful revocation orders already on the books by the time the statute takes effect.

With no evidence that when it shortened the maximum term for felony probation, the Legislature also intended to invalidate probation revocations that were lawful when ordered, I decline to give Assembly Bill 1950 a retroactive application not authorized by the legislation. I conclude that an order revoking probation, lawful when issued, is not invalidated by the fact that the underlying term of probation may be later retroactively reduced by Assembly Bill 1950.


STRATTON, P. J.


4